UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DARCY K. WATSON,            )
                            )
       Plaintiff,           )   CASE NO. C06-514-JCC-MJB
                            )
    v.                      )   REPORT AND
                            )   RECOMMENDATION
LINDA S. MCMAHON,[1]        )
Commissioner of Social Security, )
                            )
       Defendant.           )
_____)

The plaintiff Darcy K. Watson appeals to the District Court from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Supplemental Security Income under Title XVI of the Social Security Act. For the reasons set forth below, it is recommended that the Court AFFIRM the Commissioner's decision for further proceedings.

## I.  PROCEDURAL HISTORY

The plaintiff applied for Supplemental Security Income ("SSI") on May 30, 2003 (Tr. 30), alleging disability since December 21, 2002 (Tr. 74), and identifying her impairments as arthritis and an abnormal curvature of the spine. Tr. 33. The Social

---

[1] Defendant substituted pursuant to F.R.C.P. 25(d)(1) and 42 U.S.C. § 405(g). Linda S. McMahon became Acting Commissioner of Social Security on January 20, 2007.

REPORT AND RECOMMENDATION
PAGE - 1

Security Administration denied the plaintiff's application initially (Tr. 33) and upon reconsideration. Tr. 38.  A hearing was held before Administrative Law Judge ("ALJ") Marguerite Schellentrager, on March 30, 2005. Tr. 273.  The plaintiff, who was represented by counsel, testified at the hearing.  Tr. 273.  Vocational Expert, Michael Swanson, also appeared and testified at the hearing.  Tr. 300.  The ALJ issued an unfavorable decision on July 12, 2005, finding that the plaintiff is not disabled within the meaning of the Social Security Act.  Tr. 16.  On February 11, 2006, the Appeals Council denied the plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 5.  The plaintiff timely filed her appeal with this Court.

## II.  THE PARTIES' POSITIONS

The plaintiff requests that the Court reverse the Commissioner's decision and remand for further administrative proceedings.  Dkt. # 11 at 22.  The plaintiff argues that the ALJ erred in evaluating the plaintiff's impairments at step two by rejecting the plaintiff's alleged conditions of fibromyalgia, degenerative disorder of the back and neck and sleep apnea as not severe.  *Id.* at 10.  Secondly, the plaintiff alleges that the ALJ erred in rejecting the plaintiff's credibility.  *Id.* at 19.  Defendant responds that the Commissioner's decision should be affirmed because the ALJ applied the correct legal standards and supported her decision with substantial evidence.  Dkt. # 12 at 9.

## III.  STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is defined as more than a mere scintilla but less than a

REPORT AND RECOMMENDATION
PAGE - 2

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## IV.  EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A).

The Social Security regulations set out a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920. At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the claimant must establish that he or she has one or more medically severe impairments or combination of impairments. If the claimant does not have a "severe" impairment, he or she is not disabled. *Id.* at § (c). At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations. A claimant who meets one of the listings is disabled. *See Id.* at § (d).

REPORT AND RECOMMENDATION
PAGE - 3

At step four, if the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work. *Id.* at § (e). If the claimant is not able to perform his or her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled.

## V.  SUMMARY OF THE RECORD EVIDENCE

The plaintiff, who was born in October of 1951, was 53 years old at the time of the hearing before the ALJ. Tr. 30, Tr. 276. She has an eleventh grade education (Tr. 276), and she previously worked as a collection clerk, customer service representative, cashier, and telemarketer. *Id*. In her disability report, the plaintiff indicated that her condition limits her ability to work because she is "in pain all the time," cannot concentrate on her occupational duties and is falling asleep "(dozing) all of the time." Tr. 108. Other evidence relevant to the plaintiff's claim is incorporated into the discussion below.

## VI.  THE ALJ'S DECISION

The ALJ found that the plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability. Tr. 27. She determined that the plaintiff has the following severe impairments: venous stasis, nerve entrapment of the left arm, and obesity. *Id.* However, the ALJ found that these medically determinable impairments do

not meet or equal one of the listed impairments in Appendix 1, Subpart P of the Regulations. *Id*.

The ALJ concluded that the plaintiff has the residual functional capacity ("RFC") to lift up to ten pounds with limits on gross motor function of the non-dominant left hand and arm to a maximum of one third of an eight-hour workday. *Id*. The ALJ thus concluded that the plaintiff was able to engage in her past relevant work as a customer service representative, telemarketer, and a collection clerk as these positions did not require the performance of work-related activities precluded by her residual functional capacity. *Id*. In reaching this decision, the ALJ found that the plaintiff's allegations regarding her limitations are not totally credible and concluded that the plaintiff's impairments were not severe enough to preclude her from engaging in her past relevant work. The ALJ ended her analysis at step four of the sequential evaluation process. *Id*.

## VII.  DISCUSSION

### A.   ALJ's Step Two Analysis

The plaintiff argues that the ALJ erred at step two by finding the plaintiff's conditions of fibromyalgia, degenerative disorder of the back and neck, and sleep apnea not medically determinable due to a lack of objective medical evidence in the record. Dkt. # 11 at 10. In order to be considered a severe impairment and satisfy step two, the condition must first be "medically determinable," that is, resulting from anatomical, physiological, or physiological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1529(b), 416.929(b). Under no circumstances may the existence of an impairment be established on the basis of symptoms alone; no symptom or combination of symptoms by itself can

constitute a medically determinable impairment. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 96-4p.

In the plaintiff's case, upon concluding that the record contained no objective medical evidence of the three above-mentioned conditions, the ALJ terminated the analysis. Tr. 23. The plaintiff argues that in finding the conditions of fibromyalgia, degenerative disorder and sleep apnea not medically determinable, the ALJ failed to execute her duty of fully developing the record to explore all of the relevant facts as to the existence and severity of these ailments. Dkt. # at 14.

Contrary to the plaintiff's argument, the ALJ did not violate her duty to fully develop the record because (1) the plaintiff ultimately bears the burden of proving her disability and (2) the evidence in the record was not ambiguous so as to trigger the ALJ's duty to further supplement the record.

1.  Plaintiff's Burden of Proving Disability

The plaintiff fails to carry her burden of establishing her conditions of fibromyalgia, degenerative disorder of the back and neck, and sleep apnea as "medically determinable" impairments under the step two standard. It is a well-established principle that the plaintiff ultimately bears the burden of establishing disability in step two of the sequential evaluation. *See Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287 (1987) ( "The Secretary . . . has express statutory authority to place the burden of showing a medically determinable impairment on the claimant.") (internal citation and quotation marks omitted). Furthermore, the Social Security Act explicitly states that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Mathews v. Eldridge*, 424 U.S. 319, 336, 96 S.Ct. 893,

REPORT AND RECOMMENDATION
PAGE - 6

903 (U.S.Va. 1976) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.") (internal citation and quotation marks omitted).

At title 42 U.S.C. § 423(d)(5)(A), it states that the plaintiff is under a duty to "furnish such medical and other evidence" of her alleged disability to the Secretary. Here, the following objective medical evidence was left incomplete: tests for fibromyalgia, medical imaging for her alleged degenerative disorder, and a sleep study for her alleged sleep apnea.

2.     ALJ's Duty to Develop the Record

The plaintiff alleges that despite the plaintiff's ultimate duty to prove disability, the ALJ also holds a duty to the plaintiff to "fully and fairly develop the record." *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996).  An "ALJ's duty to supplement a claimant's record is triggered by only ambiguous evidence. *Webb v. Barnhart*, 433 F.3d 683, 687 ( 9th Cir. 2005).

In this case, while the ALJ did not make a specific finding that the evidence was ambiguous, she did lack sufficient evidence to make the determination that the conditions were severe at step two.  Moreover, the expert testimony she relied upon did not create any ambiguity.  The case law in this area is developed and where the medical expert opines that the tests produce "confusing" results, there is ambiguity. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  *See also Webb*, 433 F.3d at 687 (medical evidence found ambiguous because "of the obvious vicissitudes in Webb's health, particularly the ways in which his conditions improved and worsened as a result of the afflictions and their treatments.") (internal citations and quotation marks omitted).

REPORT AND RECOMMENDATION
PAGE - 7

First, regarding fibromyalgia, consultative physician Dr. Maleque did not give a definitive diagnosis of the disease but merely opined that the condition was "possible." Tr. 194. Furthermore, Dr. Maleque did not finish the subjective pain test on the plaintiff, stopping after the plaintiff tested positive for eight out of ten tender points (*Id.*), when the full test calls for eleven out of eighteen tender points to show the existence of the condition. *See Sarchet v. Chater*, 78 F.3d 305, 306-307 (7th Cir. 1996) ("rule of thumb . . . that the patient must have at least 11 [of the 18 points positive] . . . to be diagnosed"). Similarly, concerning the degenerative disorder and sleep apnea, the plaintiff failed to produce medical imaging to show the existence of the degenerative disease (Tr. 194), and failed to undergo a study to identify the existence of sleep apnea. Tr. 283. This is the plaintiff's failure to present definitive diagnoses and not the duty of the ALJ.

B.  Credibility of Plaintiff

The plaintiff asserts that the ALJ erred in finding the plaintiff not totally credible in her allegations regarding her work limitations. Dkt. # 11 at 20. The plaintiff alleges that this conclusion was improperly based on a determination of non severity of her conditions and isolated incidents in the record which do not refute her credibility. *Id.*

The general rule for assessing a claimant's credibility requires that if a claimant has established an underlying impairment which reasonably could be expected to produce the alleged subjective complaints and there is no evidence of malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony. *See Smolen*, 80 F.3d at 1281. To find the plaintiff not credible by clear and convincing evidence standard, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Dodrill v. Shalala*, 12 F.3d 915, 918

REPORT AND RECOMMENDATION
PAGE - 8

(9th Cir. 1993). In assessing credibility, the ALJ may consider, for example; 1) ordinary techniques of credibility evaluations, such as the claimant's reputation for lying and prior inconsistent statements concerning the symptoms; 2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; 3) the claimant's daily activities; and 4) medical evidence tending to discount the severity of subjective claims. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001). From the Court's reading of the record, the ALJ produced precisely the kind of clear and specific evidence from the record to support her credibility finding.

The ALJ first noted the plaintiff's inconsistency in the testimony when she said that she left her customer service job to care for her mother who had cancer. Tr. 279. The plaintiff also claimed to be unable to walk very long (Tr. 295), yet she walked to her clinic to obtain a medical note. Tr. 244. Despite testifying that she constantly feels pain throughout her body, specifically from remaining in one position for prolonged periods of time (Tr. 290), which then required her to move around (*Id.*, Tr. 285), she took a significant car trip from Seattle to Bellingham and Anacortes every other week to visit her sons. Tr. 296. Finally, the plaintiff had reported to her treating physician that she had been working for her neighbor and had applied to the state for a permanent position as her neighbor's caretaker. Tr. 235. The ALJ's credibility finding based on the record satisfies the test in *Rollins*.

The Commissioner's argument is convincing where the record shows instances in which the plaintiff failed to follow through with treatment or prescribed treatment. Although the plaintiff's treating physician recommended that she attempt weight loss and quit smoking, the plaintiff made weak attempts at either stating that she continued to smoke (Tr. 292), and could not lose weight because of her condition. Tr. 290. The

REPORT AND RECOMMENDATION
PAGE - 9

ALJ also states that because the plaintiff failed to follow through with work retraining classes due to a non-disability related reason, this demonstrates her physical and mental capability of training for such light and sedentary work.  Tr. 163-70.

The plaintiff argues *Webb* to show she tried to secure work and engaged in household chores and that her actions should not be used to discredit her disability allegations.  Dkt. # 11 at 20.  The court in *Webb* considered the fact that the claimant sought employment merely to suggest that "he was doing his utmost in spite of his health, to support himself," and his daily activities as shopping and driving a car, "[do] not in any way detract from his credibility as to his overall disability."  433 F.3d at 688.  However, *Webb* can be distinguished because of the plaintiff's inconsistencies.

Finally, the plaintiff's complaints regarding her totally inability to work are not wholly consistent with her physicians' diagnoses.  The plaintiff alleges that she is unable to work due to pain "all of the time" (Tr. 92), and cannot concentrate on her duties because she keeps falling asleep.  Tr. 279.  Dr. Maleque opined that the plaintiff could be expected to stand and walk six hours in an eight-hour day with limitations on her hip range of motion and fatigue, could sit without restrictions, and lift or carry twenty pounds occasionally and ten pounds frequently.  Tr. 194.  This opinion in not consistent with the plaintiff's allegations that she is unable to work.  The ALJ correctly noted in her opinion such inconsistencies with clear and convincing evidence.  Tr. 25.

In citing medical evidence which tended to discount the severity of the plaintiff's condition, the ALJ accorded "little weight" to both nurse practitioner Gooding and treating physician Dr. Bays.  Tr. 25-26.  Even though deference is given to the opinion of treating physicians, the Commissioner properly argues that the ALJ "is not bound by the uncontroverted opinions of claimant's physicians on the ultimate issue of disability

1  . . . [however] he cannot reject them without presenting clear and convincing reasons
2  for doing so." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).

3  In this case the ALJ presented clear and convincing reasons for according both
4  the nurse and the treating physician's opinions little weight.  Gooding's was "not
5  consistent with the objective medical evidence, nor even the claimant's own reports. *Id*.
6  The ALJ appears to have clearly recognized that "despite claimant's severe limitations
7  she reported that she was applying to the state *to be paid* for taking care of her
8  neighbor." Tr. 25.  Dr. Bays' opinion of disability is afforded "little weight" because
9  Dr. Bays "based her opinion on unsubstantiated diagnoses and failed to explain the
10 specific reasons supporting her speculated limitations." *Id*.  Furthermore, the ALJ
11 recognized that Dr. Bays' assessment of the plaintiff's functional capacity was not at
12 odds with the other physicians who found the plaintiff able to do light work.  Dr. Bays
13 wrote that the plaintiff's current limitations are "walking for far distances (greater that
14 2-3 blocks), driving . . . lifting, pulling or pushing anything greater than ten pounds."
15 Tr. 258.  These specific reasons taken from the record together with the fact that other
16 examiners found the plaintiff able to engage in light work, satisfies the clear and
17 convincing standard for rejecting treating physicians' conclusions.

18 //
19 //
20 //

REPORT AND RECOMMENDATION
PAGE - 11

## VIII. CONCLUSION

The Commissioner's determination to deny the plaintiff Social Security Income benefits is supported by substantial evidence and is free of legal error. Based on the record evidence, the undersigned recommends that the Commissioner's decision be AFFIRMED. A proposed Order accompanies this Report and Recommendation.

DATED this 2nd day of February, 2007.

*[signature]*

MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 12